IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ROB PENDERS, | § | NO. 1:23-CV-900-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| MAIN STREET RENEWAL LLC, | § | |
| AND THE AMHERST GROUP LLC, | § | |
| | § | |
| Defendants. | § | |
| _____ | § | |

ORDER DENYING MOTION FOR SUMMARY JUDGMENT

The matter before the Court is Defendants Main Street Renewal Group LLC's ("Main Street") and The Amherst Group's ("Amherst") (collectively, "Defendants") Motion for Summary Judgment. (Dkt. # 73.) The Court finds this matter suitable for disposition without a hearing. After careful consideration of the memoranda filed in support of and in opposition to the motion, the Court, for the following reasons, **DENIES** the motion.

BACKGROUND

This case was severed from Plaintiff Rob Penders ("Plaintiff" or "Penders") employment-discrimination action arising from St. Edward University's ("SEU") termination of Penders. See Penders v. St. Edwards Univ., 1-22-CV-178 (W.D. Tex.). Penders is a white male who formerly worked as the

head baseball coach of SEU from the fall of 2006, until his termination on December 3, 2021. (Dkt. # 29 at 6.) In his suit against SEU, Plaintiff alleged claims against SEU for race discrimination and retaliation in violation of 42 U.S.C. § 1981, as well as for libel and slander.[1] (Dkt. # 29.) The claims in that action arose from highly publicized allegations that Plaintiff engaged in race discrimination against student-athletes. On July 28, 2023, the Court granted Defendants' motion to sever the claims against them from those alleged against SEU. (Dkt. # 66.)

In this action, Plaintiff alleges that after his termination from SEU, he spent several months looking for employment and, on April 21, 2022, was finally offered a job by the Defendants. (Dkt. # 29 at 40.) Plaintiff was to be employed by both companies to work as an "Associate, REA," which stands for "Real Estate Acquisition." (Id.) Plaintiff's job duties were to include assisting Main Street and Amherst's efforts to buy real estate properties. (Id.) Plaintiff alleges however that prior to his start date, Main Street and Amherst learned of his lawsuit against SEU and retaliated against him by withdrawing his offer of employment. (Id. at 41.)

Plaintiff's amended complaint alleges claims against Defendants for retaliation in violation of 42 U.S.C. § 1981. (Dkt. # 29.) On May 30, 2024,

---

[1] In June 2024, the parties in that action settled their claims and that case is now closed.

Defendants filed a motion for summary judgment on Plaintiffs' claims against them. (Dkt. # 73.) On July 26, 2024, Plaintiff timely filed a response in opposition. (Dkt. # 76.) On August 2, 2024, Defendants filed their reply. (Dkt. # 77.)

## APPLICABLE LAW

"Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Vann v. City of Southaven, 884 F.3d 307, 309 (5th Cir. 2018) (citations omitted); see also Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Bennett v. Hartford Ins. Co. of Midwest, 890 F.3d 597, 604 (5th Cir. 2018) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" Nola Spice Designs, LLC v. Haydel Enter., Inc., 783 F.3d 527, 536 (5th Cir. 2015) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting

3

trial.'" Kim v. Hospira, Inc., 709 F. App'x 287, 288 (5th Cir. 2018) (quoting Nola Spice Designs, 783 F.3d at 536). While the movant must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. Austin v. Kroger Tex., L.P., 864 F.3d 326, 335 (5th Cir. 2017) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1076 n.16 (5th Cir. 1994)). A fact is material if it "might affect the outcome of the suit." Thomas v. Tregre, 913 F.3d 458, 462 (5th Cir. 2019) (citing Anderson, 477 U.S. at 248).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." Jones v. Anderson, 721 F. App'x 333, 335 (5th Cir. 2018) (quoting Duffie v. United States, 600 F.3d 362, 371 (5th Cir. 2010)). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. Infante v. Law Office of Joseph Onwuteaka, P.C., 735 F. App'x 839, 843 (5th Cir. 2018) (quoting Willis v. Cleco Corp., 749 F.3d 314, 317 (5th Cir. 2014)). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" McCarty v. Hillstone Rest. Grp., Inc., 864 F.3d 354, 357 (5th Cir. 2017) (quoting Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005)). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most

favorable to the nonmoving party.  Wease v. Ocwen Loan Servicing, LLC, 915 F.3d 987, 992 (5th Cir. 2019).

      Additionally, at the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form.  See Fed. R. Civ. P. 56(c); Lee v. Offshore Logistical & Transp., LLC, 859 F.3d 353, 355 (5th Cir. 2017).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012) (quoting Brown v. City of Houston, 337 F.3d 539, 541 (5th Cir. 2003)).

## ANALYSIS

      Defendants move for summary judgment on all of Plaintiff's claims. (Dkt. # 73.)  Plaintiff asserts his claims for retaliation pursuant to 42 U.S.C. § 1981.  Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts."  42 U.S.C. § 1981(a).  "Make and enforce contracts" is defined as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b).

      As an initial matter, although Defendants move for summary judgment pursuant to the standard of review for indirect, circumstantial evidence,

Plaintiff contends that there is direct evidence of retaliation and thus the Court must use a standard of review which does not require him to show that the retaliatory motive was the "but-for" cause of the adverse employment decision. (Dkt. # 76 at 4.) Regardless of the standard of review, Defendants contend there is no evidence of either direct or indirect retaliation. (Dkt. # 77.)

    A.    <u>Direct and Circumstantial Evidence</u>

A plaintiff may prove retaliation through direct or circumstantial evidence. <u>Laxton v. Gap Inc.</u>, 333 F.3d 572, 578 (5th Cir. 2003); <u>Russell v. McKinney Hosp. Venture</u>, 235 F.3d 219, 222 (5th Cir. 2000). If a plaintiff presents direct evidence that the employer's motivation for the adverse action was at least in part retaliatory, then the <u>McDonnell Douglas</u> framework does not apply. <u>See</u> <u>Moore v. U.S. Dep't of Agric.</u>, 55 F.3d 991, 995 (5th Cir. 1995) (noting that because the plaintiffs presented direct evidence of discriminatory animus, they "are entitled to bypass the <u>McDonnell Douglas</u> burden-shifting framework commonly applied in discrimination cases and proceed directly to the question of liability"). In such "direct evidence" cases, "the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor." <u>Brown v. E. Miss. Elec. Power Ass'n</u>, 989 F.2d 858, 861 (5th Cir. 1993). Direct evidence is "evidence which, if believed, proves the fact [of discriminatory animus] without inference or

6

presumption." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002), cert. denied, 539 U.S. 926 (2003). It includes "any statement or document which shows on its face that an improper criterion served as a basis–not necessarily the sole basis, but a basis-for the adverse employment action." Fabela v. Socorro Indep. Sch. Dist., 329 F.3d 409, 415 (5th Cir. 2003) (emphasis added), overruled on other grounds by Smith v. Xerox Corp., 602 F.3d 320, 330 (5th Cir. 2010).

A claim based on circumstantial evidence, on the other hand, is evaluated under the burden-shifting framework that is typically applied in employment retaliation cases. A prima facie retaliation claim "under either Title VII or § 1981 requires that a plaintiff show that: (1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." Id. at 407–08 (internal quotation omitted).

Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to "proffer a legitimate rationale for the underlying employment action." Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 319 (5th Cir. 2004). If the defendant satisfies this burden, the plaintiff must offer sufficient evidence that the proffered reason is a pretext for retaliation. Septimus v. Univ. of Houston, 399 F.3d 601, 608 (5th Cir. 2005); Gee v. Principi, 289 F.3d 342, 345, 347 (5th Cir. 2002). Under this framework, the employee's ultimate burden is to prove that

7

the adverse employment action would not have occurred but for the protected conduct.  Brown v. Wal-Mart Stores East, L.P., 969 F.3d 571, 577 (5th Cir. 2020).

      B.     Direct Evidence

Plaintiff argues that there is direct evidence that his offer was rescinded by Defendants because of his lawsuit claiming racial discrimination he had pending against SEU.  (Dkt. # 76.)  In support, Plaintiff presents evidence that Defendants' Human Resources Manager, Nathalie Tenorio, and Tenorio's supervisor, Elise Balliro, called Penders on May 4, 2022, to tell him that his job offer was being rescinded.  (Dkt. # 76-1 at 9.)  Penders secretly recorded the conversation and presents its transcript as evidence.  (Id. at 41–48.)  During the call, Tenorio informs Penders that his offer is being rescinded because "[f]rom a business … standpoint [] this employment relationship would not work with [] our standards, our commitments, our values and our policies."  (Id. at 42.)  Thereafter, Penders asks Tenorio "[d]oes this have something to do with a lawsuit that is out there" and whether that was a reason for the rescission.  (Id. at 43.)  In response, Tenorio states "Yeah.  I mean, [] I think while that is still outstanding, we just don't feel that [] the employment relationship [] would align [] with our company values."  (Id.)  Penders thereafter asks again whether the decision has "something to do with the lawsuit," to which Tenorio states "that's what I'm saying, is that, you know, while that's still outstanding, it doesn't align with [] our values [] and

8

our company standards, and that's why we made the decision to rescind your offer." (Id.) After offering to provide evidence that he had been "vindicated" for the accusations lodged against him, Penders asks a third time whether the decision to rescind the offer has "something to do with the lawsuit," to which Tenorio replies "Yes." (Id. at 43.) A short time later in the conversation, Penders asks "[i]f the lawsuit was dropped tomorrow, would that change something?" and Tenorio answers "Yeah. I mean, you know, at this point in time, we're just looking at it currently" and that she is "[n]ot really sure kind of in the future what the business would decide." (Id.) The conversation concludes with Tenorio stating that she would send Penders a letter confirming their conversation. (Id. at 44.)

Given the above conversation of the recorded statements of Defendants' HR executives, Penders asserts that this is direct evidence of an illegal motive for an adverse employment action. (Dkt. # 76 at 4.) In response, Defendants argue that Penders "pressured Tenorio through repetitious and badgering questioning to agree that the employment offer was rescinded because he filed the Lawsuit." (Dkt. # 73 at 9.) Defendants present their own evidence that Tenorio felt pressured by Penders' repeated questioning and that neither Tenorio nor Balliro even knew about Penders' lawsuit against SEU alleging race discrimination at the time the call was made. (Dkt. # 76-1 at 12; Dkt. # 76-3 at 17.) Tenorio testified that she was only aware of "[a]llegations of racism," but she

9

"was unaware of the lawsuit." (Dkt. # 76-1 at 12.) Balliro testified that the first time she heard of the lawsuit was during the conversation with Penders and Tenorio. (Dkt. # 76-3 at 17.)

Defendants also present evidence that neither Tenorio nor Balliro made the decision to withdraw the job offer to Penders. Instead, Defendants assert that this decision was made solely by Anthony Guaimano, an Amherst executive, who made the decision to rescind the offer after another Amherst sales team member, Valerie Myrum, performed a Google search of Penders which revealed an article detailing the circumstances of Penders' termination by SEU amid allegations of racism. (Dkt. # 73-4 at 4–5.) According to Guaimano, he made the immediate decision to withdraw the offer based on the article Myrum found and contacted the individuals who "would carry out the administrative tasks of doing things like hiring, firing, [and] rescinding job offers." (Id. at 5.) Regarding the article, Defendants assert that it did not mention Penders' lawsuit against SEU because it was published two months prior to its filing. (Dkt. # 73-9.) Guaimano also stated that he became aware of the lawsuit one year after retracting Penders' job offer, indicating that his decision was not influenced by this issue. (Dkt. # 73-4 at 8.)

Plaintiff contends, however, that Guaimano was not the sole decision-maker in this case, pointing to evidence that Brandon Thompkins, Defendants' in-

house counsel, participated in and "steered the decision-making." (Dkt. # 76 at 7.) Thompkins testified that he knew about Penders' lawsuit against SEU before the May 4th phone call to Penders from Tenorio and Balliro, and that he had one conversation with Guaimano before that about the decision to rescind Penders' offer. (Dkt. # 76-2 at 11–12.) Still, Thompkins also testified that he believed Guaimano did not know about the SEU lawsuit at the time he spoke to him. (Id.) Plaintiff also points to evidence that Guiamano had a meeting with Thompkins after he read the article about Penders, and that Thompkins was part of the process and a "chain of command" in making the decision to rescind Penders' offer. (Dkt. # 76-4 at 16.) Plaintiff further argues that Tenorio's call to Penders on May 4th indicated that she would need to talk to the "legal department" about whether he could keep the job if the lawsuit against SEU was dropped, and not whether she needed to talk to Guiamano. (Dkt. # 76-1 at 45–46.) Additionally, Plaintiff has presented evidence that his attorney contacted Thompkins after Penders spoke with Tenorio in an attempt to get Defendants to reconsider the decision. Guaimano testified that he was not made aware of this conversation, thus highlighting, according to Plaintiff, that Guaimano was not the sole decision-maker. (Dkt. # 76-4 at 15.)

Upon consideration of the record evidence before it, the Court finds that it need not delve into the analysis of the prima facie case, as Plaintiff has presented direct evidence of retaliation. Although there is a fact issue as to: (1) whether Defendants knew of Penders' lawsuit against SEU alleging race discrimination at the time the offer to Penders was rescinded, and (2) who was the ultimate decisionmaker, importantly—Defendants do not disagree that Tenorio in fact stated to Penders that the offer was withdrawn because of the lawsuit, and Tenorio does not deny making that statement.

Still, Defendants urge the Court to find that Tenorio's "ambiguous and unfounded effort to get Penders to stop his badgering was nothing more than a stray remark." (Dkt. # 73 at 23.) To determine whether comments in the constitute "direct evidence" of retaliation, or only "stray remarks," the Court must consider whether the comments are (1) related to the plaintiff's protected characteristics; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision. Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C., 778 F.3d 473, 476 (5th Cir. 2015).

Defendants do not seriously dispute that Tenorio's statement fulfills all the above factors except for the third factor. Defendants assert that Tenorio's statement was only a "stray remark" that was not made by "an individual with

authority over the challenged employment decision." (Dkt. # 73 at 23–24.) Defendants contend that Tenorio was simply the human resources manager charged with delivering notice to Penders that his offer was being rescinded. (Id. at 22.) In response, Plaintiff argues that Tenorio's statements to Penders, as the human resources representative, are statements made on behalf of the company and that any express statements of discriminatory intent are fairly attributable to the decision-makers at the company. (Dkt. # 76 at 17.) Plaintiff also provides evidence that Tenorio at least participated in the decision to rescind Penders' offer because her name was listed on the privilege log, reflecting conversations between Thompkins and other human resources professionals. (Dkt. # 76 at 18.) Additionally, Plaintiff points to Tenorio's statement in the May 4th call with Penders that "*we've* made a [] business decision to rescind the offer." (Dkt. # 76-1 at 42 (emphasis added).) Tenorio repeats the plural "we" throughout the phone conversation. (Id. at 41–45.)

   An isolated comment made by someone with no connection to an employee's performance evaluation or eventual termination does not have evidentiary force. Travis v. Bd. of Regents of the Univ. of Tex. Sys., 122 F.3d 259, 264 (5th Cir. 1997). However, "[i[f the employee can demonstrate that others had influence or leverage over the official decisionmaker, and thus were not ordinary coworkers, it is proper to impute their discriminatory attitudes to the

formal decisionmaker." Russell v. McKinney Hosp. Venture, 235 F.3d 219, 226 (5th Cir. 2000); see also Long v. Eastfield Coll., 88 F.3d 300, 307 (5th Cir. 1996) (stating that if official decisionmaker "merely 'rubber stamped'" the wishes of others, that decisionmaker would inherit the discriminatory taint); Haas v. ADVO Systems, Inc., 168 F.3d 732, 734 n.1 (5th Cir.1999) (rejecting defendant's argument that subordinate exerted no influence over ultimate decisionmaker and thus determining that sufficient evidence existed to demonstrate a causal nexus between the discriminatory remarks and the employment decision (citing Long, 88 F.3d at 307)).

At this stage of the proceedings, the Court finds that Plaintiff has presented sufficient evidence to at least create a fact issue with regard to whether Tenorio had some authority or influence over the decisionmakers in this case and thus constituting direct evidence of retaliation in this case.

C. Defendants' Explanation

Because Plaintiff has presented direct evidence of retaliation, the burden shifts to Defendants to show by a preponderance of the evidence that it would have made the same employment decision absent evidence of retaliation. See Etienne, 778 F.3d at 477. Defendants did not specifically address this issue in their briefs because they argued that Plaintiff had not presented direct evidence of discrimination. However, in the context of articulating a legitimate, non-retaliatory

14

reason for rescinding Penders' offer of employment, Defendants maintain that the decision to withdraw the offer was "due to Penders' alleged discriminatory conduct while he worked for [SEU]" and that the lawsuit played no role in the decision. (Dkt. # 73 at 14.) "But to prevail on summary judgment, [Defendants] must do more than merely identify a legitimate basis for its decision—it must show that any reasonable jury would conclude that it would have made the same decision absent the [retaliation]." Etienne, 778 F.3d at 477. Defendants have failed to carry their burden at this stage of the proceedings. In light of the direct evidence of retaliation discussed above and the associated fact issues that accompany it, the Court finds that Plaintiff has presented sufficient evidence to create a fact issue on his § 1981 retaliation claim against Defendants. Accordingly, the Court will deny summary judgment to Defendants.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Defendants' Motion for Summary Judgment. (Dkt. # 73.) Trial in this case will be set by separate Order.

**IT IS SO ORDERED.**

DATED: Austin, Texas, January 29, 2025.

_____
David Alan Ezra
Senior United States District Judge